# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES LOWELL KENTZ, | CASE NO. 1:04-cv-06066-LJO-NEW (DLB) PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| EARLENE SMITH, | (Doc. 96) |
| Defendant. | |

I.  Findings and Recommendations Addressing Defendant's Motion for Summary Judgment

    A.  Procedural History

Plaintiff Charles Lowell Kentz ("plaintiff") is a federal prisoner proceeding pro se in this civil action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), which provides a remedy for violation of civil rights by federal actors. This action is proceeding on plaintiff's second amended complaint, filed February 22, 2005, against defendant Earlene Smith ("defendant") for discriminating against plaintiff on the basis of his sexual orientation, in violation of the Equal Protection Clause. (Docs. 18, 19.) On November 13, 2006, defendant filed a motion for summary judgment.[1] (Docs. 96, 98.) Plaintiff filed an opposition on December 1, 2006.[2] (Doc. 99.)

---

[1] Pursuant to the court's order of November 16, 2005, page 11, line 1 through page 12, line 8, and page 12, line 18 through page 13, line 17 were stricken from defendant's motion.

[2] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the court in an order filed on April 9, 2007. Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (Doc. 104.) Plaintiff was provided with the opportunity to file a new opposition, but opted to stand by his opposition filed on December 1,

B.  Legal Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or

---

2006. (Doc. 106.) Although plaintiff mentions he has been separated from his legal material, plaintiff did not seek an extension of time or any other relief. (Id.) Plaintiff may not avoid summary judgment by making vague references to evidence not submitted with the opposition. The discovery phase of this litigation is closed, and although plaintiff refers to evidence he is unable to produce at this time, plaintiff did not specifically identify any evidence he needs or planned to rely upon. Plaintiff's mention of the need for an evidentiary hearing is without merit. Motions is cases such as this are resolved on the papers without hearing. Local Rule 78-230(m).

1 admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e);
2 Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in
3 contention is material, i.e., a fact that might affect the outcome of the suit under the governing
4 law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific
5 Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e.,
6 the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool
7 v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

8      In the endeavor to establish the existence of a factual dispute, the opposing party need not
9 establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
10 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
11 trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce
12 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
13 Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963
14 amendments).

15      In resolving the summary judgment motion, the court examines the pleadings,
16 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
17 any.  Rule 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at
18 255, and all reasonable inferences that may be drawn from the facts placed before the court must
19 be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v.
20 Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam).  Nevertheless, inferences are not drawn out
21 of the air, and it is the opposing party's obligation to produce a factual predicate from which the
22 inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D.
23 Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

24      Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
25 show that there is some metaphysical doubt as to the material facts.  Where the record taken as a
26 whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine
27 issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).
28 ///

C. <u>Discussion</u>

At the time of the events in question, plaintiff was an inmate housed at the Taft Correctional Institution ("TCI"), a privately run federal prison in Taft, California. At issue in this action is whether or not defendant, a staff librarian at TCI, intentionally discriminated against plaintiff on the basis of his sexual orientation when she failed to rehire him for a law library clerk position.[3]

"[T]he Due Process Clause of the Fifth Amendment subjects the federal government to constitutional limitations that are the equivalent of those imposed on the states by the Equal Protection Clause of the Fourteenth Amendment." <u>Consejo De Desarrollo Economico De Mexicali, A. C. v. United States</u>, 482 F.3d 1157, 1170 n.4 (9th Cir. 2007) (citing to <u>Bolling v. Sharpe</u>, 347 U.S. 497, 74 S.Ct. 693 (1954)). "The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." <u>City of Cleburne v. Cleburne Living Ctr., Inc.</u>, 473 U.S. 432 (1985) (citing <u>Plyler v. Doe</u>, 457 U.S. 202, 216 (1982)). "'To state a claim . . . for a violation of the Equal Protection Clause . . . a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.'" <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 686 (9th Cir. 2001) (quoting <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194 (9th Cir. 1998)). "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." <u>Serrano v. Francis</u>, 345 F.3d 1071, 1082 (9th Cir. 2003) (quoting <u>Maynard v. City of San Jose</u>, 37 F.3d 1396, 1404 (9th Cir. 1994)) (emphasis in original). "To avoid summary judgment, [plaintiff] 'must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that [defendant's] decision was . . . motivated'" by plaintiff's membership in a protected class. <u>Serrano</u>, 345 F.3d at 1082 (quoting <u>Bingham v. City of Manhattan Beach</u>, 329 F.3d 723, 732 (9th Cir. 2003) (citations and alterations omitted)).

---

[3] Although both parties also refer to allegations that plaintiff received money from other inmates to help with legal questions, the court at no time made a finding that those allegations gave rise to a claim for relief under section 1983 for denial of equal protection. Whether or not plaintiff accepted money in exchange for legal assistance and whether or not defendant knew about that and considered it in declining to rehire plaintiff do not support an equal protection claim of intentional discrimination based on membership in a protected class.

Defendant argues that she is entitled to summary judgment because she did not discriminate against plaintiff but instead declined to rehire him due to his harassing behavior toward her. Plaintiff worked as an orderly in the Education Department at TCI from July 28, 2000 to December 4, 2002. (Dec. of Earlene Smith, Doc. 98, ¶8.) In December of 2002, defendant submitted paperwork requesting that plaintiff be transferred to the position of clerk in the law library at TCI, and the transfer was approved on or about December 4, 2002. (Id., ¶9.) Defendant served as plaintiff's supervisor in his position as library clerk at TCI, from December 4, 2002 through March 17, 2004. (Id.)

On or about March 17, 2003, plaintiff was transferred to the Special Housing Unit ("SHU") at TCI for disciplinary reasons. (Id., ¶10.) Defendant was not involved in plaintiff's transfer to the SHU. (Id.) Pursuant to the policies and procedures at TCI, inmates who are placed in the SHU are removed from the general inmate population and placed in the detention side of the prison. (Id., ¶11.) As set forth in the TCI Policy and Procedure Manual, the termination of an inmate from a job may occur for many reasons, including being sent to the SHU for more than eight days. (Id.; Exhibit B, Doc. 98, court record pg. 4.) From March 5, 2003 to April 17, 2003, plaintiff remained housed in the SHU. (Smith Dec., ¶12.) As a result, plaintiff was automatically placed on "unassigned job status" pursuant to TCI policy, and his job as a library clerk was terminated. (Id.) Defendant was not involved in the termination of plaintiff's job. (Id.)

On or about April 17, 2003, plaintiff was released from the SHU, and from April 17, 2003 to May 5, 2003, plaintiff was re-assigned by his counselor to work as an orderly. (Id., ¶13.) In May 2003, defendant submitted paper work requesting that plaintiff be rehired as an inmate library clerk, and her request was approved on or about May 5, 2003. (Id., ¶14.) From May 5, 2003 to January 31, 2004, plaintiff continued to work as an inmate library clerk, under the supervision of defendant. (Id., ¶15.)

On or about February 2, 2004, plaintiff was again transferred to the SHU, for another period of detention for disciplinary reasons. (Id., ¶16.) Defendant was not involved in plaintiff's second transfer to the SHU. (Id.) From February 2, 2004 to approximately March 17, 2004,

5

plaintiff remained in detention in the SHU. (Id., ¶17.) Pursuant to TCI policy, plaintiff was automatically placed on "unassigned job status" because he was in the SHU, and his job as a library clerk at TCI was terminated. (Id.) Defendant was not involved in the termination of plaintiff's job. (Id.)

During the period February 2, 2004 to approximately March 17, 2004, when plaintiff was under detention in the SHU, he began sending defendant numerous correspondence, in which he insisted that she rehire him as an inmate library clerk when he was released from detention. (Id., ¶18.) Defendant found plaintiff's correspondence to be harassing, intimidating, and disturbing. (Id.)

On or about March 17, 2004, plaintiff was released from the SHU and returned to the general inmate population. (Id., ¶19.) At the time plaintiff was released from the SHU, there were no job openings available in the library. (Id.) Upon his release from the SHU, plaintiff began making numerous visits to defendant's office, insisting that she rehire him as an inmate library clerk. (Id.) For a period of over three months, from March 17, 2004 to July 12, 2004, plaintiff continued to contact and harass defendant for the purpose of insisting that she rehire him. (Id., ¶20.) Plaintiff's actions during the three month period from March 17, 2004 to July 12, 2004, became more and more demanding and harassing toward defendant. (Id.)

On July 12, 2004, plaintiff made another visit to defendant's office, and again insisted that she rehire him. (Id., ¶21.) Defendant attempted to explain to him that she was not going to rehire him because of his continual harassing behavior toward her. (Id.) Plaintiff became argumentative, and defendant gave him a direct order to be quiet and listen to her. (Id..) Plaintiff refused the order and continued to speak to defendant in a raised, intimidating voice. (Id.) Defendant instructed plaintiff to let her talk but he instead continued interrupting her and would not allow her to speak. (Id.) Defendant again gave him a direct order to stop talking and be quiet, but he refused. (Id.) Defendant ordered plaintiff to be quiet a fourth time, but he still he would not obey the order. (Id.) Defendant then told plaintiff that if he would not be quiet and listen, she would get a security officer and he would be taken out of her office. (Id.) Plaintiff

///

1  just talked louder in defiance, and defendant went to the Education Office and called for a
2  security officer who physically removed plaintiff from the library.  (Id.)
3      Defendant caused an incident report to in be prepared in connection with the incident in
4  her office involving plaintiff on July 12, 2004.  (Id., ¶22.)  On July 15, 2004, plaintiff was found
5  guilty of a violation of Code 307, for his refusal to obey the direct order from defendant, and was
6  placed on detention in the SHU as a result.  (Id.)
7      Defendant denies that she made her decision not to rehire plaintiff on the basis of his
8  claimed sexual preference or orientation.  (Id., ¶23.)  Defendant contends that her decision not to
9  rehire plaintiff as an inmate library clerk was the result of his repeated attempts to annoy, harass,
10 and intimidate her following his release from the SHU on or about March 17, 2004.  (Id.)
11     The court finds that defendant has met her initial burden of informing the court of the
12 basis for her motion, and identifying those portions of the record which she believes demonstrate
13 the absence of a genuine issue of material fact.  The burden therefore shifts to plaintiff to
14 establish that a genuine issue as to any material fact actually does exist. See  Matsushita Elec.
15 Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  As stated above, in attempting to
16 establish the existence of this factual dispute, plaintiff may not rely upon the mere allegations or
17 denials of his pleadings, but is required to tender evidence of specific facts in the form of
18 affidavits, and/or admissible discovery material, in support of its contention that the dispute
19 exists.  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289;
20 Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).  Plaintiff must do more than attack the
21 credibility of defendant's evidence, see National Union Fire. Ins. Co. v. Argonaut Ins. Co., 701
22 F.2d 95, 97 (9th Cir. 1983) ("[N]either a desire to cross-examine an affiant nor an unspecified
23 hope of undermining his or her credibility suffices to avert . . . judgment."), and arguments or
24 contentions set forth in a responding brief do not constitute evidence, see Coverdell v. Dep't of
25 ///
26 ///
27 ///
28 ///

Soc. & Health Servs., 834 F.2d 758, 762 (9th Cir. 1987) (recitation of unsworn facts not evidence).[4]

Although plaintiff attests that he was told by S. Duffle, a Special Investigations Supervisor, that defendant said, in part, she was not comfortable with his openly gay lifestyle, plaintiff has not submitted any admissible evidence of this. (Dec. of Charles Kentz, Doc. 99, court record pg. 7, ¶7.) Duffle's statements are hearsay and inadmissible. Also inadmissible is plaintiff's allegation that other inmates told him defendant did not rehire him "because of [his] problems as a homosexual." (2nd Amend. Comp., Doc. 18, pg. 3 § IV.) Plaintiff may defeat defendant's motion only if there exists admissible evidence raising a triable issue of fact as to whether defendant intentionally discriminated against him based on his membership in a protected class. Plaintiff has not tendered any admissible evidence that defendant discriminated against him on the basis of his sexual orientation, and defendant is therefore entitled to judgment as a matter of law.

### D.  Conclusion

For the foregoing reasons, the court HEREBY RECOMMENDS that defendant's motion for summary judgment, filed November 13, 2006, be GRANTED, thus concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file

///

///

///

---

[4] However, verified complaints and oppositions constitute opposing affidavits for purposes of the summary judgment rule if they are based on facts within the pleader's personal knowledge. Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **June 26, 2007**            /s/ **Dennis L. Beck**
                                  UNITED STATES MAGISTRATE JUDGE